Dean R. Broyles, Esq., CA Bar No. 179535
dbroyles@nclplaw.org
NATIONAL CENTER FOR LAW & POLICY
539 West Grand Avenue
Escondido, California 92025
Tel:  (760) 747-4529
Fax: (760) 747-4505

Robert H. Tyler, Esq., CA Bar No. 179572
rtyler@tylerbursch.com
Nada N. Higuera, Esq. CA Bar No. 299819
nhiguera@tylerbursch.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Tel:   (951) 600-2733
Fax:  (951) 600-4996

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACREAMENTO DIVISION

| | |
|---|---|
| **CROSS CULTURE CHRISTIAN CENTER**, a California Non-Profit Corporation; **PASTOR JONATHAN DUNCAN**, an individual<br><br>          Plaintiffs,<br><br>     vs.<br><br>**GAVIN NEWSOM**, in his official capacity as Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of California; **SONIA ANGELL**, in her official capacity as | Case No.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

California Public Health Officer; **MAGGIE PARK**, in her official capacity as Public Health Officer, San Joaquin County; **MARCIA CUNNINGHAM**, in her official capacity as Director of Emergency Services, San Joaquin County; **CITY OF LODI**; **TOD PATTERSON**, in his official capacity as Chief of Police of Lodi, California,

                Defendants.

## PRELIMINARY STATEMENT

1.     Civil rights are not suspended by a virus. Fundamental and unalienable rights are, by their very nature, "essential."   Yet the State of California has, in a sweeping abuse of its power, criminalized all religious assembly and communal religious worship while allowing citizens to gather at a liquor store, pot-dispensary, Planned Parenthood, Walmart, CVS, Costco, Home Depot, and many other locations which are deemed "essential."   This is not a hypothetical situation from an Orwellian novel describing a bleak future—this is the current and very real nightmare endured by millions of religious citizens who maintain the conviction that the faithful practice of regularly gathering together is absolutely "essential."   The state's flagrant abuse of authority violates Plaintiffs' and other citizens' fundamental and unalienable civil rights, including the free exercise of religion, right to assemble, freedom of speech, and equal protection of the law, in violation of the U.S. and California constitutions. The mass criminalization of religious gatherings was dismissively and causally accomplished by the state and local government's abuse of its discretion in issuing orders relating to COVID-19. The state fails to articulate or support the implicit assertion that the complete prohibition of religious gatherings due to their "non-essential' status is the least restrictive means to accomplish its compelling interests.  In contrast, many other establishments are permitted to continue operations if they carefully follow Centers for Disease Control and Prevention ("CDC") social distancing

guidelines. Simultaneously, the state maintains a near endless list of commercial establishments as "essential" wherein people have been freely gathering and where social distancing is impracticable or impossible.  At the least, churches, similar to Cross Culture Christian Center, should be permitted to gather so long as they abide by the CDC's social distancing guidelines.

2.      The state does not have the authority to disregard well-established religious tenets relating to gatherings and method of worship.  Despite the absence of authority, California has limited all religious institutions to one mode of worship only: live streaming services on the internet. Plaintiff Cross Culture Christian Center's (the "Church") protected First Amendment activity-the gathering together of a religious congregation- has been criminalized in spite of the Church carefully following the social distancing guidelines promulgated by the CDC.  "The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Church of the Lukumi Balalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1990).  The state's ban is openly targeted at religious gatherings while permitting similar gatherings for "essential" entities.

3.      On or about April 3, 2020, San Joaquin County issued a specific stay-at-home order targeting the Church.  The order completely prohibited "non-essential" uses of the Church building as well as the entire parking lot. At the same time, a purportedly "essential" day care center on the same Church property is able to continue to operate on-site.  The Church is therefore banned even from making video recordings for church services streamed over the internet.  If the Church wanted to have a "drive-in service," which is also permissible under Governor Gavin Newsom's stay-at-home Executive Order N-33-20 dated March 19, 2020 ("State Order), it is prohibited from doing so by the April 3, 2020 County Order.  This absolute government ban on any and all of the Church's religious worship activity is "'beyond all reason' unconstitutional." *On Fire*

*Christian Center, Inc. v. Fischer*, No. 3:20-cv-264-JRW at *3 (W.D. Ky. Apr. 11, 2020), quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905).

4.    The seeds of this litigation were sewn by the emergence and spread of COVID-19, otherwise commonly referred to a coronavirus. This lawsuit germinated because of Governor Gavin Newsom's sweeping stay at home State Order with no end date, and the four subsequent "stay at home" orders of the Public Health Officer and Director of Emergency Services of San Joaquin County ("County Orders") dated March 21, 2020 and March 26, 2020, April 3, 2020, and April 14, 2020.   These State and County Orders have declared that all religious assemblies are "non-essential," even churches that are carefully following CDC "social distancing" guidelines. Simultaneously the State and County Orders declare similarly situated commercial business assemblies as "essential," permitting virtually unlimited parking and human assembly.  This lawsuit became full grown as of the April 3, 2020 San Joaquin County Order which specifically targeted the Church and resulted in the Church being completely locked out of their leased building and parking lot. The City of Lodi Police Department aggressively enforced the religiously intolerant and discriminatory State Order and County Orders (collectively, the "Orders"), further necessitating this lawsuit.

5.    On Wednesday, March 25, 2020, the City of Lodi, acting on the tip of an informant, sent two uniformed police officers to disrupt the Church's lightly attended midweek service. The police officers told Plaintiff JONATHAN DUNCAN ("Pastor Duncan") the meeting was in violation of the Orders and warned that further enforcement actions would likely follow.  A few days later, on April 1, 2020, the City of Lodi sent three police officers to post a notice on the Church building, warning that the Church's "non-essential" use of the building was a "public nuisance" in violation of the State and County Orders and that the Church would be criminally prosecuted if they continued to meet.  On April 3, 2020, San Joaquin County issued an Order specifically targeting the Church, declaring the Church "non-essential" and completely barring it from using the Church building or parking lot.  On Palm Sunday morning, April 5,

2020, more than five Lodi uniformed police officers told Pastor Duncan that a county order barred him from using the Church building and parking lot, and that the landlord had changed the locks on the Church. The landlord did not have a judicial order to change the locks, nor had any unlawful detainer proceedings been initiated. The officers warned Pastor Duncan that they would cite him if he tried to access the Church property, despite the valid lease that was still in effect.

6.     For more than four hundred years, people have come to America in a quest for religious freedom. Our shores were populated with many, like the Puritans, who were fleeing religious persecution in Europe. They understood that "[n]o place, not even the unknown, is worse than *any* place whose state forbids the exercise of your sincerely held religious beliefs." *On Fire Christian Center, Inc., supra*, at *4. Stretching back to the formation of colonies like Pennsylvania and Rhode Island, where citizens could practice religion in a way that would not be impeded by the government, this basic freedom that was sought by so many colonists was subsequently enshrined in the constitutions of the states and, most importantly, in the First Amendment to the United States Constitution. "Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof." U.S. Const. amend i.

7.     The First Amendment's guarantee of religious liberty was perhaps its boldest and most audacious promise. Indeed, history is dominated by a long list of tyrants and tyrannies. Until America, freedom was not the historical norm. For centuries European kings and rulers had spent considerable treasure and blood attempting to coercively impose differing religious beliefs and practices on others. America would be different, precisely because of our firm commitment to religious freedom and tolerance. As de Tocqueville wrote, "religion…must be considered as the first of their political institutions; for if it does not give them the taste for liberty, it singularly facilitates use of it." Justice Anthony Kennedy recently echoed de Tocqueville's sentiments, "Among the reasons the United States is so open, so tolerant, and so free is that no person may be restricted or demeaned by government in

exercising his or her religion." *Burwell v. Hobby Lobby*, 573 U.S. 682, 739 (2014) (Kennedy, J., concurring).

8.      Yet in the days leading up to one of the holiest days on the Christian calendar, Easter, Defendants Gavin Newsom, the San Joaquin County Officials, and officers of the Lodi Police Department (collectively, "Defendants"), announced and enforced what would previously have been unthinkable in a nation like the United States—that they were prohibiting all church worship gatherings in the state of California, limiting all religious assembly and worship only to video streamed over the internet. On April 3, 2020, San Joaquin County doubled down the threat to the Church, targeting the Church with an order prohibiting its use of the Church's leased buildings and parking lot.  This ban is backed by Orwellian threats of potential criminal penalties, including citations, fines, and arrest.

9.      Due to the unprecedented nature of COVID-19 and the indisputable tragedy the disease has wrought on our great Republic, there are those who may find it tempting to hold that First Amendment rights should acquiesce to claims of public health and safety in this instance.  However, state regulations, even during a public health crisis do not supersede constitutional rights: "[N]o rule proscribed by a state, nor any regulation adopted by a local government agency acting under the sanction of state legislation, shall contravene the Constitution of the United States, nor infringe on any right granted or secured by that instrument**.… Local…regulation…*must always yield in case of conflict with…the Constitution***, or any right which that instrument gives or secures." *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 25 (1905) (emphasis added).

10.     The justification for this astounding government overreach is the COVID-19 pandemic, truly a national and international tragedy.  The coronavirus outbreak has turned our world upside-down, causing profound damage to our lives and to our economy.  And it is understood that the rules of constitutional interpretation are not as rigidly fixed in a time of national emergency. *Jacobson v. Massachusetts*, 197 U.S. 11

(1905).  "But even under *Jacobson*, constitutional rights still exist.  Among them is the freedom to worship as we choose."  *On Fire Christian Center, Inc., supra*, at *4 (citing *Jacobson* at 31).

11.     In full understanding of the public and private danger posed by COVID-19, the Church has conducted itself and intends to continue to conduct its religious assemblies and worship services in a manner that adheres to CDC and California guidelines on social distancing and safe gatherings. The Church merely contends that, at least for its congregants, its assemblies *are* an "essential service" and should therefore, because of fundamental First Amendment Protections, be treated at least as equally as businesses which have which been declared "essential," including the commercial retail stores or the daycare center that meets at the Church site.  Defendants' targeting of religious adherents and total ban from religious assembly, even in a manner consistent with governmental social distancing guidelines, while permitting similar (and at times even more intimate) social interaction to continue unabated in retail and commercial establishments, flies in the face of the First Amendment of the U.S. Constitution, Article I, Sections 2, 3 and 4 of the California Constitution, and the Religious Land Use and Institutionalized Persons Act.

12.     Recognizing that times of crisis would arise, that such times might lead governments to seek to repress unalienable fundamental freedoms, and that the Republic's survival depended upon defeating such repressive instincts, the genius of our founding document is that it placed explicit protections into the text of the Bill of Rights. And, importantly, "[o]ur Bill of Rights placed our survival on firmer ground— that of freedom, not repression." *Konigsberg v. State Bar of California*, 366 U.S. 36, 79 (1961) (Black, J., dissenting).

13.     During times of national crisis attended by widespread fear and panic, such as the current uncertainty arising from COVID-19, "the fog of public excitement obscures the ancient landmarks set up in our Bill of Rights." *American Communist Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 453 (1950) (Black, J., dissenting). But, where the

fog of public excitement is at its apex, "the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937).

14.    Our commitment to our founding principles is most tested and best calculated during times of crisis and uncertainty. Our willingness to reaffirm our staunch commitment to our fundamental freedoms is imperative to the very survival of the American experiment. For, "[h]istory reveals that the initial steps in the erosion of individual rights are usually excused on the basis of an 'emergency' or threat to the public. **But the ultimate strength of our constitutional guarantees lies in the unhesitating application in times of crisis and tranquility alike**." *United States v. Bell*, 464 F.2d 667, 676 (2d Cir. 1972) (Mansfield, J., concurring) (emphasis added).

15.    In the instant matter, Plaintiff brings this case to highlight the troubling erosion of fundamental and cherished liberties wrought by the imposition of the State Order and the County Orders and their unconstitutional enforcement by the Lodi Police Department. Plaintiffs seek not to discredit or discard the government's unquestionable interest in doing that task for which it was instituted – protecting the citizenry. But, as is often true in times of crisis and fear, Plaintiffs respectfully submit that in an effort to uphold their sworn duties, Defendants have – perhaps unwittingly – stepped over a line the Constitution does not permit. Therefore, Plaintiffs bring this action to ensure that this Court safeguard the cherished liberties for which millions have fought, bled, and died. For, "**[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be discarded**." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 483 (1934) (Sutherland, J., dissenting) (emphasis added). As John Adams opined in 1765, "Liberty must at all hazards be supported. We have a right to it, derived from our Maker. But if we had not, our fathers have earned and bought it for us, at the expense of their ease, their estates, their pleasure, and their blood."

///

16.     Plaintiffs pray unto the Court that it not permit their unalienable and fundamental liberties enshrined in the Constitution to be another tragic casualty of COVID-19.

## PARTIES – PLAINTIFFS

17.     Plaintiff CROSS CULTURE CHRISTIAN CHURCH (the "Church") is a domestic non-profit corporation Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.  The Church is located in the City of Lodi, San Joaquin County, California.

18.     Plaintiff JONATHAN DUNCAN ("Pastor Duncan") serves as the lead pastor of the Church.  He is 43 years old.

## PARTIES – DEFENDANTS

19.     Defendant GAVIN NEWSOM is the Governor of the State of California, and is sued in his official capacity.  The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, §1. Governor Newsom signed the State Order.

20.     Defendant XAVIER BECERRA is the Attorney General of California, and is sued in his official capacity. Under California law, the Attorney General is the chief law enforcement officer with supervision over all sheriffs in the state. Cal. Const. Art. V, §13.

21.     Defendant SONIA ANGELL is the California Public Health Officer. She is sued in her official capacity only. Under the authority of the State Order, the State Public Health Officer created California's "Essential Critical Infrastructure Workers," discussed below.

22.     Defendant MAGGIE PARK is the Public Health Officer, San Joaquin County, California. She is sued in his official capacity only.  She signed the San Joaquin County "Stay at Home" Orders dated March 21, 2020 and March 26, 2020, April 3, 2020, and April 14, 2020.

///

23.    Defendant MARCIA CUNNINGHAM is the Director of Emergency Services, San Joaquin County, California.   She is sued in her official capacity only. She signed the San Joaquin County "Stay at Home" Orders dated March 21, 2020, March 26, 2020, and April 14, 2020.

24.    Defendant CITY OF LODI is a municipality organized under the laws of the State of California.  The City of Lodi is subject to suit under 42 U.S.C. 1983 and common law.  Defendant TOD PATTERSON is the Chief of Police of the City of Lodi. He is sued in his official capacity only.  He is responsible for enforcing and has directed the enforcement of the State Orders and the County Orders against religious institutions including the Church.

## JURISDICTION AND VENUE

25.    This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.*

26.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

27.    This action also arises under Article I, §§ 2, 3 and 4 of the California Constitution (freedom of speech, right of assembly, and religious free exercise).

28.    This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

29.    This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

///

///

30.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because Defendants are situated in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**FACTUAL BACKGROUND**

**A.     Executive and Administrative Response to COVID-19.**

31.     On March 4, 2020, California Governor Gavin Newsom declared a state of emergency for the entire State of California in response to COVID-19.  On March 11, 2020, the World Health Organization (WHO) declared COVID-19 a pandemic. On March 13, 2020, President Donald J. Trump declared COVID-19 a national emergency. On March 16, 2020, President Trump and the CDC issued "15 Days to Slow the Spread" guidance advising individuals, in part, to avoid **social** gatherings in groups of more than 10 people.  On March 19, 2020, Governor Newsom issued the State Order, Executive Order N-33-20, a statewide stay at home order with exceptions for "critical infrastructure." On March 21, 2020, San Joaquin County issued its own stay at home order.  On March 26, 2020, San Joaquin County issued a revised "stay at home" order. On April 3, 2020 San Joaquin County issued a targeted Order, specifically naming the Church and declaring its ongoing use of the leased property in violation of the State and County Orders.  This April 3 targeted Order declared the Church a "non-essential" entity and ordered it to cease all occupation and use of the leased buildings and the parking lot, while at the same time permitting a preschool to continue to meet on the property.  On April 14, 2020, San Juaquin County issued another amended order allowing "non-essential businesses" to conduct "minimum basic operations."

**B.     Governor Newsom's Executive Order**

32.     On March 4, 2020, Governor Gavin Newsom proclaimed a State Emergency as a result of the threat of COVID-19.[1] Governor Newsom's "stay at home" State Order included a multitude of exceptions for "critical infrastructure." A true and

---

1 As of the date of this filing, the Proclamation of a State of Emergency can be found online at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf

correct copy of this State Order is attached hereto as Exhibit 1.   The State Order provides, in pertinent part:

> "**[A]ll residents are directed to immediately heed** the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19."

> "To protect public health, **I** as State Public Health Officer and Director of the California Department of Public Health **order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors**, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, **I may designate additional sectors as critical** in order to protect the health and well-being of all Californians….this order is to go into effect immediately and **shall stay in effect until further notice**."

Exhibit 1 at Paragraph 1 (emphasis added).

33.     Although the State Order references the "federal critical infrastructure sectors," on or about March 22, 2020, the California Public Health Officer published its own list of "Essential Critical Infrastructure Workers" ("ECIW")[2], discussed in detail below. A true and correct copy of the ECIW is attached as Exhibit 6.   When compared to the federal list, the ECIW is significantly more restrictive of the religious clergy, only allowing them to participate in "faith-based services that are provided through streaming or other technology."   Exhibit 6.   Accordingly, California prohibits all religious leaders from conducting in-person and out-of-home religious services, regardless of the "social distancing" measures taken to reduce or eliminate the risk of spreading the virus.

34.     Meanwhile, the ECIW list deems the continuity of services provided by coffee baristas, burger flippers, laundromat technicians, pot dispensary operators, and liquor store employees to be so "essential" for society that these activities are permitted

---

2 As of the date of this filing, the list of Essential Critical Infrastructure Workers ("ECIW") can be found online at https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf

to continue under the State Order, despite the existence of the very same risk Defendants rely on to stymie the Plaintiffs' exercise of fundamental rights.

35.     Furthermore, the State Order delegates to the State Public Health Officer and Director of the California Department of Public Health the authority to "**designate additional sectors as critical...**"   Exhibit 1 at paragraph 1 (emphasis added).  Finally, the State Order has no expiration date, as it "shall stay in effect until further notice." Exhibit 1 at paragraph 1.

**C.     First San Joaquin County Order Prohibiting All Non-Essential Gatherings**

36.     On March 21, 2020, San Joaquin County issued its own stay at home order, a true and correct copy of which is attached hereto as Exhibit 2.  This county order provides, in pertinent part, mandated that:

> "**ALL INDIVIDUALS LIVING IN THE COUNTY TO STAY AT HOME** OR AT THEIR PLACE OF RESIDENCE **EXCEPT THAT THEY MAY LEAVE TO PROVIDE OR RECEIVE CERTAIN ESSENTIAL SERVICES OR ENGAGE IN CERTAIN ESSENTIAL ACTIVITIES AND WORK FOR** ESSENTIAL BUSINESSES AND GOVERNMENTAL SERVICES; EXEMPTING INDIVIDUALS EXPERIENCING HOMELESSNESS FROM THIS ORDER BUT URGING THEM TO FIND SHELTER AND GOVERNMENT AGENCIES TO PROVIDE IT; **DIRECTING ALL BUSINESSES AND GOVERNMENTAL AGENCIES TO CEASE NON-ESSENTIAL OPERATIONS AT PHYSICAL LOCATIONS IN THE COUNTY**; **PROHIBITING ALL NON-ESSENTIAL GATHERINGS OF ANY NUMBER OF INDIVIDUALS**; AND ORDERING CESSATION OF ALL NON-ESSENTIAL TRAVEL."

Exhibit 2 at p. 1 (emphasis added).

37.     The county's stay at home order prohibited all non-essential gatherings of any number of individuals."    Exhibit 2 at paragraph 6.   However, there was an exemption for those providing or receiving "essential services" or those engaging in "essential activities" or working for "essential businesses and governmental services."

Exhibit 2 at paragraph 11.  The order allowed individuals the unlimited ability to leave their residence to "engage in activities or perform tasks essential to their health and safety," and perform "essential activities" including the following: "obtaining medical supplies and medication, visiting a health care professional, obtaining supplies they need to work from home…to obtain necessary services or supplies [including food or consumer products]….to engage in outdoor activities….to perform work as an Essential Critical Infrastructure worker….to care for a family member in or pet in another household…to attend private gatherings of not more than six relatives." Exhibit 2 at paragraph 11.  Individuals or businesses were warned of criminal penalties for not obeying the order. The order warned that "Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both. (California Health and Safety Code § 120295, et *seq.)*" Exhibit 2 at p. 1.

**D.     Second San Joaquin County Order Prohibiting All Non-Essential Gatherings**

38.     On March 26, 2020, San Joaquin County issued a revised "stay at home" order, a true and correct copy of which is attached hereto as Exhibit 3.  Similar to the prior county order, it exempted those providing or receiving "essential services" or those engaging in "essential activities" or working for "essential businesses and governmental services" and "**prohibiting all non-essential gatherings of any number of individuals.**"  Exhibit 3 at p. 1 (emphasis added).

39.     The order, in pertinent part, directed:

"**ALL INDIVIDUALS LIVING IN THE COUNTY TO STAY AT HOME** OR AT THEIR PLACE OF RESIDENCE **EXCEPT THAT THEY MAY LEAVE TO PROVIDE OR RECEIVE CERTAIN ESSENTIAL SERVICES OR ENGAGE IN CERTAIN ESSENTIAL ACTIVITIES AND WORK FOR ESSENTIAL BUSINESSES** AND GOVERNMENTAL        SERVICES;        EXEMPTING        INDIVIDUALS EXPERIENCING HOMELESSNESS FROM THIS ORDER BUT URGING THEM TO FIND SHELTER AND GOVERNMENT AGENCIES TO PROVIDE IT; DIRECTING ALL BUSINESSES AND GOVERNMENTAL        AGENCIES        TO        CEASE        NON-ESSENTIAL

---

**14**
**VERIFIED COMPLAINT**

OPERATIONS AT PHYSICAL LOCATIONS IN THE COUNTY; PROHIBITING ALL NON-ESSENTIAL GATHERINGS OF ANY NUMBER OF INDIVIDUALS; AND ORDERING CESSATION OF ALL NON-ESSENTIAL TRAVEL."

Exhibit 3 at p. 1 (emphasis added).

40.   This new order emphasized the need for "social distancing" when, for any reason, people left their homes.  Social distancing was defined in the new order as "maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high touch surfaces, and not shaking hands." Exhibit 3 at paragraph 11(f).

41.   Just as before, the new county order allowed individuals the unlimited ability to leave their residence to "engage in activities or perform tasks essential to their health and safety," including to "perform "essential activities" including, "obtaining medical supplies and medication, visiting a health care professional, obtaining supplies they need to work from home…to obtain necessary services or supplies [including food or consumer products]….to engage in outdoor activities….to perform work as an Essential Critical Infrastructure worker….to care for a family member in or pet in another household."  Exhibit 3 at paragraph 11(a).   Under the terms of County Order, any [grocery, convenience, warehouse, or "big box"] store may operate without any limit on the number of employees or customers present, as long as it insures social distancing (6 feet) and other health practices for its employees, and otherwise promotes social distancing (about 6 feet) and other best practices for non-employees.

42.   However, the option "to attend private gatherings of not more than six nonrelatives in a home or place of residence" was removed from the list of permitted activities. Also, similar to the prior order, individuals and businesses were warned of criminal penalties for not obeying the order. "Violation of or failure to comply with this

Order is a misdemeanor punishable by fine, imprisonment, or both. (California Health and Safety Code § 120295, *et seq.*)"  Exhibit 3 at p. 1.

**D. The April 3 Targeted County "Order Prohibiting Public Assembly" at Cross Culture Christian Center**

43.    On April 3, 2020, San Joaquin County Public Health Officer, Maggie Park, M.D. issued an "Order Prohibiting Public Assembly," a true and correct copy of which is attached hereto as Exhibit 4.   This order specifically referenced Plaintiff Cross Culture Christian Center's lease and ongoing use of the facility owned by their landlord, Bethel Open Bible Church located at 760 S Ham Ln, in Lodi, California.   The order states, in pertinent part:

"You are hereby **ordered to close your facility located at 760 South Ham Lane, Lodi, California, and prevent future use of the facility, including the parking lot, for public assembly** due to the outbreak of COVID-19 in the state of California and County of San Joaquin.

On March 19, 2020, the Governor of California issued an executive **order N-33-20** (the "Order") **mandating all individuals living in the state of California to stay home** or at their place of residence **except as needed to maintain continuity of operations of the 16 federal critical infrastructure sectors**. On **March 26, 2020, the San Joaquin County Public Health Officer issued an order prohibiting public assemblies of any size that are not essential for life and safety.**

On March 29, 2020, the **City of Lodi reported to the County Public Health Officer that your tenant, Cross Culture Community Church was continuing to use your facility for public assembly, and that Cross Culture Community Church was aware of the County Order and intended to continue to meet in violation of the Order**. As a facility for public assembly **neither the building or the parking lot is part of the essential critical infrastructure as defined by State and Federal agencies**. Continued operation, in violation of the Order, will hamper the County's ability to slow transmission of the disease and increase the risk to the public from COVID-19.

Any person who refuses or willfully neglects to comply with this emergency order is guilty of a misdemeanor, punishable by fine and/or

imprisonment. (Government Code section 8665; Health and Safety Code section 120275.) In addition, there are civil and administrative penalties that can be imposed upon you as a result of continued operation."

The ability of Bethel Open Bible Church to operate a child-care facility consistent with the order of the State Public Health Officer issued March 22, 2020 is unaffected by this Order."

Exhibit 4 (emphasis added).

44.   The order targeted at the Church's lawful use of Bethel Open Bible Church's facilities and threatening criminal and civil penalties against was signed by Maggie Park, M.D., San Joaquin County Public Health Officer.

**E. Most Recent San Joaquin County Order Prohibiting All Non-Essential Gatherings**

45.   On April 14, 2020, San Joaquin County issued a revised "stay at home" order, a true and correct copy of which is attached hereto as Exhibit 5.  Similar to the prior county orders, it exempted those providing or receiving "essential services" or those engaging in "essential activities" or working for "essential businesses and governmental services" and **prohibiting all non-essential gatherings of any number of individuals**".  Exhibit 5 at paragraph 5 (emphasis added).

46.   This April 14, 2020 County Order allows "non-essential businesses" to conduct "minimum basic operations," but not be open to the public. Exhibit 5 at paragraph 11(b) (emphasis added).

**F. California's Definition of "Essential Critical Infrastructure" Workers**

47.   On March 22, 2020, the State Public Health Officer created a list designating those persons who were "Essential Critical Infrastructure Workers," a true and correct copy of which is attached hereto as Exhibit 6 ("State ECIW List").  The purpose of the State ECIW List was to "help state, local, tribal, and industry partners as they work to protect communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security" Exhibit 5  at p. 2.

48.    The fourteen-page State ECIW List is largely modeled on the Federal ECIW List of recommended sector and jobs, which the government has deemed are important for the continuity of operations during times of crisis and which may remain open.  The State CIW exempts thirteen sectors of workers from the State and County "stay at home" orders:  Healthcare/Public Health; Emergency Services Sector; Food and Agriculture;  Energy;  Water  and  Wastewater;  Transportation  and  Logistics; Communications and Information Technology; Critical Manufacturing; Hazardous Materials; Financial Services; Chemical; Defense Industrial Base and Other Community-Based Government Operations.  Exhibit 6 at pp. 1-14.  This State ECIW list is incorporated into the State and County Orders discussed above.  See Exhibits 1-5.

49.    The "Other Community-Based Government Operations" sector allowed to remain open and whose workers are exempt from the "stay at home" orders includes a wide variety of commercial retail stores: "Commercial Retail Stores, that supply essential sectors, including convenience stores, pet supply stores, auto supplies and repair, hardware and home improvement, and home appliance retailers."  Exhibit 6 at p. 11 (emphasis added).

50.    The U.S. Department of Homeland Security Cybersecurity and Infrastructure Agency updated guidance document, *Essential Critical Infrastructure Workforce: Ensuring Community and National Resilience In COVID-19 Response*, Ver. 3.0 (April 17, 2020) ("CISA Guidance 3.0") is incorporated by reference into the State and County Orders (Exhibits 1-5). A true and correct copy of this CISA Guidance 3.0 is attached hereto as Exhibit 7. It specifies "Clergy for essential support" as "essential critical infrastructure workers" who are "needed to maintain the services and functions Americans depend on daily and that need to be able to operate resiliently during the COVID-19 pandemic response," and whose ability "to continue to work during periods of  community  restriction,  access  management,  social  distancing,  or  closure orders/directives is crucial to community resilience and continuity of essential functions." Exhibit 7.  The State ECIW also references faith-based organizations, but

the State of California strictly limits their activities only to online worship services: "Faith based services that are provided through streaming or other technology" Exhibit 6 at p. 11.

51.     The introduction to the State ECIW List acknowledges that Governor Newsom's State Order (Exhibit 1) has delegated to the "State Public Health Officer" the discretion to designate "additional sectors…as critical to protect [sic] health and well-being of aall [sic] Californians."  Exhibit 6 at p. 1.   More than eleven states have declared houses of worship as "essential services" or have otherwise exempted religious services from the stay at home orders.[3]

52.     Governor Gavin Newsom was asked to include houses of worship in California as part of the State ECIW or as exempted from the "stay at home" orders, but he has ignored this request and has thus far declined to do so. A true and correct copy of the letter written to Governor Newsom from Plaintiffs' counsel is attached hereto as Exhibit 8.

53.     Therefore, both the state of California and San Joaquin County have, through their sweeping stay at home orders incorporating the State ECIW List have, on their face and as applied, permitted virtually unrestricted public assembly with social distancing at a multitude of commercial retail stores by deeming it as "essential." At the same time, the orders forbid any and all public assembly at houses or worship with social distancing, simply by discretionarily deeming religious assembly as "non-essential" and not including it on the State ECIW List.   In California, a broad array of commercial assembly is currently deemed lawful while, at the same time, any and all religious assembly, even if social distancing is employed, is classified as a criminal activity.   It is this discretionary determination by State Officials which Plaintiffs contend violates multiple provisions of the U.S. Constitution and similar provisions of the Constitution of the State of California, as is discussed further below.

---

[3] https://abcnews.go.com/Health/states-crack-gatherings-due-coronavirus-exemptions-religious-groups/story?id=69847021

### G. The Religious Beliefs and Practices of the Church

54.   The Church is led by Pastor Duncan and a church board of directors.  The Church started as a home Bible study meeting in Pastor Duncan's home approximately twelve years ago.

55.   In 2009, the growing group incorporated as a California non-profit religious corporation.  From 2015 to 2019, the Church rented its own facility in an industrial area of Lodi, California.  In March of 2019, the Church entered into a three-year lease and started renting space from Bethel Open Bible Church in Lodi, California.

56.   Currently, the Church has approximately 27 adult attendees during its Sunday service, and even less attendees during its midweek Wednesday night service. The leased sanctuary where the Church meets can hold up to 400 people.

57.   The Church describes itself as "a Community of the Rescued. Our heart is to truly be The Cross Culture, making the Love of God our priority. We as a Community are working through our struggles so we will better reflect Christ in our lives, home and world. Our desire is to love as Jesus loved, teach as Jesus taught, and give as Jesus gave."

58.   The Church has a sincerely and deeply held religious belief that it is essential for them as Christians to assemble and regularly gather together in person for the teaching of God's Word, prayer, worship, baptism, communion and fellowship. This is based on scriptures from the Bible, including Hebrews 10:25, Acts 2:40-47, and Acts 5:40-42.  These activities are primarily fulfilled in the gathering together of the Church body for Sunday worship services and Wednesday night worship services.

59.   The Church believes that based on the Bible, they are eternal beings in this temporary world, and God's Word (the Bible) is even more essential than food based on the following scripture in Matthew 4:4: "[Jesus] answered, 'It is written, "Man shall not live by bread alone, but by every word that comes from the mouth of God.""'  Indeed, the joyful duty to assemble together, in person, for worship services is a central tenet of the Christian faith, both believed and practiced by the Church according to the Bible, a

tenet that is especially important to maintain during times of turmoil and trouble in the world: "And let us consider how to stir up one another to love and good works, not neglecting to meet together, as is the habit of some, but encouraging one another, and all the more as you see the Day drawing near." Hebrews 10:24–25.

60.    The joyful duty to love their neighbors is likewise a central tenet of the Christian faith believed and practiced by the Church. They believe this is done first through sharing the Gospel of Jesus Christ—that Jesus died for the forgiveness of our sins, that He rose again to secure for us eternal life with God the Father, and that whoever believes in Jesus Christ will share in that eternal life—and second through good works, such as caring for the sick and hungry. And the Church believes, still according to the Bible, that it is the very practice of regularly assembling together to worship God through the preaching and teaching of God's Word that inspires and equips Christians to love their neighbors and perform such good works, as shown in the passage quoted above ("let us consider how to stir up one another to love and good works"), and also: "All Scripture is breathed out by God and profitable for teaching, for reproof, for correction, and for training in righteousness, that the man of God may be complete, equipped for every good work." 2 Tim. 3:16–17.

61.    Pastor Duncan was a police officer with the Stockton Police Department before he was medically discharged due to a physical injury.  As a public servant, Pastor Duncan took the following oath:

"I, Jonathan Duncan, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

62.    The Church's congregation is multi-racial and represents a cross-section of society, from rich to poor and of all ages. The Church's congregation also includes members and visitors running the gamut of essential workers. These essential workers and service providers receive spiritual support, comfort, guidance, and shelter from the ministry of the Church's personnel, including Pastor Duncan.

**H. The Church's Worship Services Following State and County Executive Orders and Enforcement Against the Church by the Lodi Police Department**

63.    Even before the State and County "stay at home orders" went into effect, the Church was already following CDC and state recommended "social distancing" guidelines.  Among other actions, Pastor Duncan counselled individuals to follow their doctor's instructions, adhere to the CDC guidelines, and act in the best interest of community health and safety.

64.    After the State and County Orders were issued, in accordance with its sincerely held religious beliefs and its practices consistent to those beliefs, the Church elected to continue to conduct worship services on March 22, March 25, and March 29, 2020, while at the same time continuing to follow CDC and state recommended "social distancing" guidelines.  In addition to the CDC guidelines, the Church is willing to limit the number of congregants in the sanctuary at the same time to 50 persons or less and have multiple personnel present to ensure proper spacing between persons and orderly compliance with all CDC guidelines.

65.    On Wednesday March 25, 2020, two Lodi Police Officers disrupted The Church's midweek service.  On information and belief, their visit was triggered by someone acting on behalf of Bethel Church (the landlord/lessor) who had informed Lodi Police Department that the Church would be meeting that night, purportedly in violation of the County Orders.  Lodi Police Corporal Bradley and Officer Silva entered the foyer of the building where the Church meets at approximately 7:30 p.m.  Due to their presence, Pastor Duncan was forced to communicate with them for an extended

period of time and was therefore prohibited from performing his regular pastoral duties of leading the Church worship service that evening.

66.    During the conversation, Corporal Bradley advised Pastor Duncan that he was there to "educate" the Church about the San Joaquin County Order.  However, Corporal Bradley proceeded to warn Pastor Duncan about the steps the Police Department was prepared to take against the Church following this initial "education" procedure, including posting a written cease and desist notice on the building for non-compliance.  Bradley continued, that, if this were not heeded, the Lodi Police would likely follow up with an enforcement action, purportedly for "disturbing the peace." Based on the totality of this conversation, it was Pastor Duncan's understanding, who is a retired law enforcement officer, that these Lodi Police officers had been dispatched with orders to shut down the Church's assembly and order them to vacate the building.

67.    On March 27, 2020, counsel for Plaintiffs submitted a cease and desist letter to the Lodi Police department and other city officials.  The letter demanded that government officials cease all enforcement actions and agree to honor and respect the Church's First Amendment rights to peaceably assemble, freedom of speech, and free exercise of religion.  The City of Lodi did not immediately respond to Plaintiffs' counsel, but waited more than a week to reply.

68.    On March 29, 2020, the Church met for its regular Sunday services. Before the services started, the building was prepared to accommodate social distancing.

69.    Signs were posted on the Church doors and in the entry area advising Church members of the following:

"COVID-19 Precautions:  Please abide by the following, just as you would at the grocery store- 1. Wash hands upon entry.  2. Social distancing 6 feet or more. 3. Sit together as a household, with your children. 4. If you are sick or at risk, please know that you are loved, but we request that you resort to isolation for your safety and the safety of others.  We will be live on the church's Facebook and hope you tune in."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20    70.    Hand sanitizer and sanitizing wipes were placed in the foyer near the signs

21  (See photo above).

22    71.    The drinking fountain was blocked off and covered.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///





72.     The rows of chairs in the sanctuary were separated from each other by more than six (6) feet (See pictures below).

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



73.    On April 1, 2020, Lodi Police officers posted a "public nuisance" notice on the building leased by the Church.  A true and correct copy of this notice is attached as Exhibit 9.  Printed on the City of Lodi's letterhead, the notice stated that "the business activities conducted on these premises are illegal."  Exhibit 9. Referencing California Health and Safety Codes §§ 120130 and 12025, California Penal Code §373a, the State Order, and the County Order, the notice declared that "This posting constitutes written legal notice to discontinue **non-essential business activities** and **maintenance of a public nuisance** upon these premises."  Exhibit 9 (emphasis added).  The notice listed the business name targeted as, "Cross Culture Church" [sic].  Exhibit 9.  The notice threatened that "failure to discontinue **non-essential** business activities is a **misdemeanor**… that each violation was a "separate and distinct offence" the may be "**prosecuted** until the nuisance is abated."  Exhibit 9 (emphasis added).  It was signed

by Sgt. Fritz, Sgt. Ambriz and Officer Stillman, of the Lodi Police Department, badge numbers 56, 32, and 34.

74.   Less than two days later, on April 3, 2020, San Joaquin County issued its "Order Prohibiting Public Assembly" Exhibit 4 (discussed in detail above), which specifically targeted the Church and forbade any use of the buildings or parking lot for any reason, except for daycare.

75.   On Sunday, April 5, 2020 when Pastor Duncan arrived at the Church to open up for Palm Sunday services, he was greeted by a half dozen law enforcement officers who informed him that the locks had been changed on the church building by the landlord. They also advised him that if he were to access the parking lot and/or church building that they would cite him for violating the public health orders, but would not arrest him. The Church's lease for the subject property is still in effect, it has not expired, and no unlawful detainer proceedings have been filed to prevent the Church's legal occupancy and possession pursuant to the terms of the lease agreement. The landlord changed the locks without a judicial order to do so.

## CONSTITUTIONAL CLAIMS

### COUNT I

### THE ORDERS VIOLATE PLAINTIFFS' RIGHT TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT

76.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

77.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

78.   Plaintiffs have sincerely held religious beliefs that the Bible is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

79.    Plaintiffs have sincerely held religious beliefs, rooted in the Bible, that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis.

80.    The State Order and the County Orders, on their face and as applied, prohibit all faith-based assemblies and gatherings in Plaintiffs' leased Church, including the use of the leased parking lot, even if Plaintiffs follow CDC and state "social distancing guidelines, which is a violation of Plaintiffs' right to the free exercise of religion.

81.    The State Order and the County Orders, on their face and as applied, target Plaintiffs' sincerely held religious beliefs and practices by prohibiting all faith-based gatherings.

82.    The State Order and the County Orders, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of its sincerely held religious beliefs or Defendants' imposed value system.

83.    The State Order and the County Orders, on their face and as applied, place Plaintiffs in an irresolvable conflict between compliance with the orders and compliance with their sincerely held religious beliefs.

84.    The State Order and the County Orders, on their face and as applied, put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings and tenets of the Bible concerning the assembling together of the Church.

85.    The State Order and the County Orders, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

86.    The State Order and the County Orders, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs.

87.    Defendants lack a compelling, legitimate, or rational interest in the State Order and County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services, such as the preschool which continues to meet at the Church location and other commercial establishments where people assemble and congregate.

88.    Even if the State Order and the County Orders' restriction on faith-based gatherings were supported by a compelling interest, which they are not, they do not employ the least restrictive means to accomplish the government's purported interest.

89.    The State Order and the County Orders fail to accommodate Plaintiffs' sincerely held religious beliefs.

90.    The State Order and the County Orders, specifically target Plaintiffs' sincerely held religious beliefs, and the Orders set up a system of individualized exemptions that permit certain other similarly situated businesses or services to continue operations under certain guidelines while prohibiting faith-based gatherings, such as Plaintiffs', from operating under similar guidelines.

91.    The State Order and the County Orders, on their face and as applied, constitute a religious gerrymander.

92.    The State Order and the County Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs' immediate and irreparable harm, and actual and undue hardship.

93.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

94.    WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

///

///

///

///

**VERIFIED COMPLAINT**

# COUNT II

## THE ORDERS VIOLATE PLAINTIFFS' RIGHT TO FREEDOM OF ASSEMBLY UNDER THE FIRST AMENDMENT

95.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

96.   The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging the right of the people peaceably to assemble.

97.   The State Order and the County Orders, on their face and as applied, prohibit all faith-based assemblies and gatherings in the Church, including Plaintiffs' use of the leased parking lot, even if Plaintiffs follow CDC and state "social distancing guidelines, which is a violation of Plaintiffs' right to peaceably assemble.

98.   The State Order and the County Orders, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' right to assemble.

99.   The State Order and the County Orders, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

100.   The State Order and the County Orders, on their face and as applied unconstitutionally discriminate on the basis of content.

101.   Defendants lack a compelling, legitimate, or rational interest in the State Order and County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services, such as the preschool with continues to meet at the Church location and other commercial establishments where people assemble and congregate.

102.   The State Order and the County Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the Orders.

103.   The State Order and the County Orders, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

104.   The State Order and the County Orders, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

105.   The State Order and the County Orders, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected right to assembly.

106.   The State Order and the County Orders, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Defendants, to apply or not apply the orders in a manner to restrict free assembly.

107.   The State Order and the County Orders, on their face and as applied, are under-inclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed non-essential.

108.   The State Order and the County Orders, on their face and as applied, are unconstitutionally vague and overbroad as they chill and abridge the free assembly rights of Plaintiffs.

109.   On their face and as applied, the State Order and the County Orders are a violation of Plaintiffs' right to free assembly and have caused, are causing, and will continue to cause Plaintiff to suffer immediate and irreparable injury and undue and actual hardship.

110.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of its constitutional rights.

111.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT III
## THE ORDERS VIOLATE
## PLAINTIFFS' RIGHT TO FREEDOM OF SPEECH UNDER
## THE FIRST AMENDMENT

112.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

113.   The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' freedom of speech.

114.   The State Order and the County Orders, on their face and as applied, prohibit all faith-based assemblies, gatherings, and religious speech in Plaintiffs' leased Church, including Plaintiffs' use of the leased parking lot for expressive activities, even if Plaintiffs follow CDC and state social distancing guidelines, which is a violation of Plaintiffs' right to the freedom of speech.

115.   The State Order and the County Orders, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' speech.

116.   The State Order and the County Orders, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

117.   The State Order and the County Orders, on their face and as applied, unconstitutionally discriminate on the basis of content.

118.   Defendants lack a compelling, legitimate, or rational interest in the State Order and County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services, such as the preschool with continues to meet at the Church location, and other commercial establishments where people assemble and congregate.

119.   The State Order and the County Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the Orders.

120.   The State Order and the County Orders, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

121.   The State Order and the County Orders, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

122.   The State Order and the County Orders, on their face and as applied, are irrational and unreasonable and imposes unjustifiable and unreasonable restrictions on

Plaintiffs' constitutionally protected speech.

123.  The State Order and the County Orders, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Defendants, to apply or not apply the Orders in a manner to restrict free speech.

124.  The State Order and the County Orders, on their face and as applied, are under-inclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non-essential."

125.  The State Order and the County Orders, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech rights of Plaintiffs.

126.  On their face and as applied, the State Order and County Orders violation of Plaintiffs' right to free speech has caused, is causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

127.  Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their constitutional rights.

128.  WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT IV

## THE ORDERS VIOLATE

## THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT

129.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

130.  The Establishment Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the government from establishing a religion.

131.  The Establishment Clause also prohibits excessive government entanglement with religion.

132.   The Establishment Clause also prohibits the government from showing hostility toward religion and prohibits showing favoritism towards one religious sect over another or towards non-religion and religion.

133.   The State Order and the County Orders, on their face and as applied, permit Defendants to display impermissible hostility towards religious or faith-based gatherings.

134.   The State Order and the County Orders, on their face and as applied, impermissibly show favoritism toward certain non-religious gatherings over religious or faith-based gatherings.

135.   The State Order and the County Orders, on their face and as applied, violate the Establishment Clause because they excessively entangle the government with religion.

136.   The State Order and the County Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

137.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their cherished constitutional liberties.

138.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT V

## THE ORDERS VIOLATEPLAINTIFFS' RIGHT TO EQUAL PROTECTION UNER THE FOURTEENTH AMENDMENT

139.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

140.   The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

141.   The State Order and County Orders, on their face and as applied, are an unconstitutional abridgement of Plaintiffs' right to equal protection under the law, are

not neutral, and specifically target Plaintiffs and other faith-based gatherings for unequal treatment.

142.   The State Order and County Orders, on their face and as applied, are an unconstitutional abridgment of Plaintiffs' right to equal protection because they permit Defendants to treat Plaintiffs differently from other similarly situated businesses and organizations on the basis of content and viewpoint of Plaintiffs' gatherings.

143.   The State Order and County Orders, on their face and as applied, impermissibly discriminate between certain non-religious gatherings and religious or faith-based gatherings.

144.   Defendants lack a compelling, legitimate, or rational interest in the State Order and County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services, including the preschool that continues to meet at the Church site and other commercial business where people assemble and congregate.

145.   The State Order and County Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served.

146.   The State Order and County Orders, on their face and as applied, do not have a rational basis.

147.   The State Order and County Orders, on their face and as applied, are irrational and unjustifiable and impose irrational and unjustifiable restrictions on Plaintiffs' religious and faith-based gatherings.

148.   The State Order and County Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

149.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their constitutional rights.

150.   WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in the prayer for relief.

**COUNT VI**

**THE ORDERS VIOLATE**

**PLAINTIFFS' RIGHT TO ASSEMBLE UNDER ARTICLE I, §3 OF THE CALIFORNIA CONSTITUTION**

151.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

152.   Article I, Section 3 of the Constitution of the State of California states that "[t]he people have the right…to assemble freely to consult for the common good."

153.   The State Order and County Orders, on their face and as applied, completely bar Plaintiffs' religious gatherings even if Plaintiffs fully comply with the CDC and state social distancing guidelines.

154.   The State Order and County Orders, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' right to assemble.

155.   The State Order and County Orders, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

156.   The State Order and County Orders, on their face and as applied, unconstitutionally discriminate on the basis of content.

157.   Defendants lack a compelling, legitimate, or rational interest in the State Order and the County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services.

158.   The State Order and County Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the Orders.

159.   The State Order and County Orders, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

160.   The State Order and County Orders, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

161.   The State Order and County Orders, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected right to assembly.

162.   The State Order and County Orders, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Defendants, to apply or not apply the Orders in a manner to restrict free assembly.

163.   The State Order and County Orders, on their face and as applied, are under-inclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non-essential."

164.   The State Order and County Orders, on their face and as applied, are unconstitutionally vague and overbroad as they chill and abridge the free assembly rights of Plaintiffs.

165.   The State Order and County Orders' violation of Plaintiffs' right to free assembly have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

166.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their constitutional rights.

167.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT VII

## THE ORDERS VIOLATE PLAINTIFFS' RIGHT TO LIBERTY UNDER ARTICLE 1, § 1 OF THE CALIFORNIA CONSTITUTION

168.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

169.   In California, "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring,

---

**VERIFIED COMPLAINT**

possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy. Cal. Const. Art. 1, §1.

170. California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease ..." *Id*.

171. California courts found that Public Health Officials could not quarantine twelve (12) blocks of San Francisco Chinatown because of nine (9) deaths due to bubonic plague. See *Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson*, 103 F. 1 (C.C. Cal. 1900). The court found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed". *Jew Ho*, 103 F. 10 (C.C. Cal. 1900).

172. California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting them to virtual imprisonment under a purported order of quarantine." *Ex parte Arata*, 52 Cal. App. 380, 383 (1921) (emphasis added).

173. In *Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson*, 103 F. 1 (CC Cal. 1900), the California courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown.

174.   Plaintiffs have never had or contracted said coronavirus; they have never been at any time exposed to the danger of contracting it, and have never been in any locality where said coronavirus or any germs of bacteria thereof, has or have existed.

175.   Requiring Plaintiffs to abstain from all religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

176.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

177.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## COUNT VIII

## THE GATHERING ORDER VIOLATES PLAINTIFFS' RIGHT TO FREEDOM OF SPEECH UNDER ARTICLE 1, § 2 OF THE CALIFORNIA CONSTITUTION

178.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

179.   Article I, Section 2 of the Constitution of the State of California states, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

180.   The State Order and County Orders, on their face and as applied, completely bar religious speech at religious gatherings, even if Plaintiffs fully comply with the CDC and state social distancing guidelines. This violates Plaintiffs' right to the freedom of speech.

181.   The State Order and County Orders, on their face and as applied, are an unconstitutional prior restraint on Plaintiffs' speech.

182. The State Order and County Orders, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

183. The State Order and County Orders, on their face and as applied, unconstitutionally discriminate on the basis of content.

184. Defendants lack a compelling, legitimate, or rational interest in the State Order and County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services, including the preschool that continues to meet at the Church site and other commercial business where people assemble and congregate.

185. The State Order and County Orders, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the Orders.

186. The State Order and County Orders, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

187. The State Order and County Orders, on their face and as applied, do not leave open ample alternative channels of communication for Plaintiffs.

188. The State Order and County Orders, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected speech.

189. The State Order and County Orders, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Defendants, to apply or not apply the Orders in a manner to restrict free speech.

190. The State Order and County Orders, on their face and as applied, are under-inclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed non-essential.

191. The State Order and County Orders, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech rights of Plaintiffs.

192.   On their face and as applied, the State Order and County Orders have caused, are causing, and will continue to cause Plaintiffs to suffer immediate and irreparable injury and undue and actual hardship.

193.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of its constitutional rights.

194.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT IX

### THE ORDERS VIOLATE PLAINTIFFS' RIGHT TO FREE EXERCISE AND ENJOYMENT OF RELIGION UNDER ARTICLE I, §4 OF THE CALIFORNIA CONSTITUTION

195.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

196.   Article I, § 4 of the Constitution of the State of California states, "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

197.   "[T]he religion clauses of the California Constitution are read more broadly than their counterparts in the federal Constitution."   Carpenter v. City and County of San Francisco, 93 F.3d 627, 629 (1996).

198.   Plaintiffs have sincerely held religious beliefs that the Bible is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

199.   Plaintiffs have sincerely held religious beliefs, rooted in the Bible's commands, that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis.

200.   The State Order and County Orders, on their face and as applied, completely bar Plaintiffs' faith-based religious gatherings and use of their parking lot,

even if Plaintiffs fully comply with the CDC and state social distancing guidelines, in violation of Plaintiffs' right to the free exercise of religion.

201.   The State Order and County Orders, on their face and as applied, target Plaintiffs' sincerely held religious beliefs by prohibiting faith-based assemblies of any number of people and the even the use of the Church parking lot, whether or not Plaintiffs follows CDC social distancing guidelines.

202.   The State Order and County Orders, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the requirements of their sincerely held religious beliefs or Defendants' imposed value system, which deems religious assembly as non-essential.

203.   The State Order and County Orders, on their face and as applied, place Plaintiffs in an irresolvable conflict between compliance with the Orders and their sincerely held religious beliefs.

204.   The State Order and County Orders, on their face and as applied, put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings of Christianity concerning the assembling of church members.

205.   The State Order and County Orders, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

206.   The State Order and County Orders, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs.

207.   Defendants lack a compelling, legitimate, or rational interest in the State Order and County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services, including the preschool that continues to meet at the Church site and other commercial business where people assemble and congregate.

208.   Even if the State Order and County Orders' restriction on faith-based gatherings were supported by a compelling interest, which they are not, they are not the least restrictive means to accomplish the government's purported interest.

209.   The State Order and County Orders, on their face and as applied, fail to accommodate Plaintiffs' sincerely held religious beliefs.

210.   The State Order and County Orders, on their face and as applied, specifically target Plaintiffs' sincerely held religious beliefs and set up a system of individualized exemptions that permit certain other similarly situated businesses or services to continue operations under certain guidelines while prohibiting faith-based gatherings from operating with similar guidelines.

211.   The State Order and County Orders, on their face and as applied, constitute a religious gerrymander.

212.   The State Order and County Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, and actual and undue hardship.

213.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional and statutory rights unless Defendants are enjoined from implementing and enforcing the State Order and County Orders.

214.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## STATUTORY CLAIMS

### COUNT X

### THE GATHERING ORDER VIOLATES THE CHURCH'S RIGHTS UNDER THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT, 42 U.S.C. § 2000 et. Seq.

215.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

216.   The Religious Land Use and Institutionalized Persons Act ("RLUIPA") states that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution." 42 U.S.C. § 2000cc(a)(1). If the government does impose such a restriction, it must then demonstrate that such a burden on the religious assembly is supported by a compelling interest and is the least restrictive means to further that alleged interest.

217.   RLUIPA further mandates that no government "impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. §2000cc(b)(1).

218.   RLUIPA further states that "[n]o government shall impose or implement a land use regulation that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. §2000cc(b)(3).

219.   The State Order and County Orders, on their face and as applied, bar Plaintiff Church from assembling for worship in its leased facility and even from using the parking lot, thereby imposing a land use regulation in a manner that imposes a substantial burden on the religious exercise of the Church, a religious assembly or institution, in violation of 42 U.S.C. § 2000cc(a)(1).

220.   The State Order and County Orders, on their face and as applied, impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, in violation of 42 U.S.C. §2000cc(b)(1).

221.   The State Order and County Orders, on their face and as applied, impose or implement a land use regulation that totally excludes religious assemblies from a jurisdiction or unreasonably limits religious assemblies, institutions, or structures within a jurisdiction, in violation of 42 U.S.C. §2000cc(b)(3).

222.   The Church has sincerely held religious beliefs that the Bible is the infallible, inerrant word of the Lord Jesus Christ, and that Church members are to follow its teachings.

223.   Plaintiff Church has sincerely held religious beliefs, rooted in the Bible, that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis.

224.   The State Order and County Orders, on their face and as applied, target the Church's sincerely held religious beliefs by prohibiting faith-based gatherings of any size, even if they follow CDC "social distancing" guidelines.

225.   The State Order and County Orders, on their face and as applied, impermissibly and substantially burdens the Church's sincerely held religious beliefs.

226.   The State Order and County Orders, on their face and as applied, constitute a substantial burden on the Church's sincerely held religious beliefs and religious practice of regular assembly.

227.   Defendants lack a compelling, legitimate, or rational interest in the State Order and County Orders' application of differential standards for churches and faith-based gatherings than those applicable to other so-called "essential" businesses or services, including the preschool that continues to meet at the Church site and other commercial business where people assemble and congregate.

228.   Even if the State Order and County Orders' restriction on faith-based gatherings were supported by a compelling interest, which they are not, the State Order and County Orders do not employ the least restrictive means to accomplish the government's purported interest.

229.   The State Order and County Orders, on their face and as applied, have caused, are causing, and will continue to cause the Church immediate and irreparable harm, and actual and undue hardship, as they completely bar the Church's religious assembly and worship.

230. The Church has no adequate remedy at law to correct the continuing deprivation of its Constitutional and statutory rights, unless Defendants are enjoined from implementing and enforcing the State Order and County Orders.

231. As the Church has found it necessary to engage the services of counsel to vindicate its rights under the law, the Church is therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

232. WHEREFORE, the Church respectfully prays for the relief against Defendants as hereinafter set forth in its prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. That this Court issue a Preliminary Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with them, from enforcing the State Order and County Orders so that:

i. Defendants will not apply the State Order and County Orders in any manner as to infringe Plaintiffs' constitutional and statutory rights by discriminating against their right to assembly, speech, free exercise of religion, equal protection, and all other constitutional and statutory rights outlined herein;

ii. Defendants will apply the State Order and County Orders in a manner that treats Plaintiffs' faith-based gathering on equal terms and in an equal manner with that afforded other non-faith-based gatherings;

iii. Defendants will permit faith-based gatherings to continue to meet so long as they comply with the same social distancing and reasonable limitations Defendants have placed on similar non-faith-based assemblies in the State Order and County Orders; and

iv. Defendants will permit Plaintiffs the opportunity to comport their behavior to any further limitations or restrictions that Defendants may impose in any future

modification, revision, or amendment of State Order and County Orders or similar directive, instruction, ordinance, or other legally operative mechanisms.

B.     That this Court issue a Permanent Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with them, from enforcing the State Order and County Orders so that:

i.     Defendants will not apply State Order and County Orders in any manner as to infringe Plaintiffs' constitutional and statutory rights by discriminating against their right to assembly, speech, free exercise of religion, equal protection, and all other constitutional and statutory rights outlined herein;

ii.    Defendants will apply the State Order and County Orders in a manner that treats Plaintiffs' faith-based gatherings on equal terms and in an equal manner with that afforded other non-faith-based gatherings;

iii.   Defendants will permit faith-based gatherings to continue to meet so long as they comply with the same social distancing, precautionary, and reasonably limitations Defendants have placed on similar non-faith-based assemblies; and

iv.    Defendants will permit Plaintiffs the opportunity to comport their behavior to any further limitations or restrictions that Defendants may impose in any future modification, revision, or amendment of the State Order and County Orders or similar directive, instruction, ordinance, or other legally operative mechanisms.

C.     That this Court render a Declaratory Judgment declaring that the State Order and County Orders both on their face and as applied by Defendants are unconstitutional under the United States Constitution and California Constitution, and declaring that:

i.     Defendants have violated Plaintiffs' right to free exercise of religion by impermissibly prohibiting faith-based gatherings, substantially burdening their sincerely held religious beliefs and applying criteria that are neither neutral nor generally applicable to religious and non-religious gatherings;

ii.     Defendants have violated Plaintiffs' right to freedom of assembly by impermissibly prohibiting faith-based gatherings;

iii.    Defendants have violated Plaintiffs' right to freedom of speech by impermissibly prohibiting faith-based gatherings of more than ten people;

iv.     Defendants have violated Plaintiffs' right to equal protection of the laws by impermissibly prohibiting faith-based gatherings and applying criteria that treats faith-based gatherings in a discriminatory and dissimilar manner than that applied to various non-religious gatherings;

v.      Defendants have violated the Establishment Clause by impermissibly demonstrating hostility towards faith- based gatherings and by impermissibly showing favoritism to certain non-religious gatherings;

vii.    Defendants have violated the Religious Land Use and Institutionalized Persons Act by substantially and impermissibly burdening the Church's sincerely held religious beliefs and treating it in an unequal manner to other non-religious assemblies or institutions, by imposing a substantial burden on the Church's sincerely held religious beliefs without a compelling government interest, and without deploying the least restrictive means to achieve any permissible government interest; and

D.      That this Court award Plaintiffs nominal damages for the violation of Plaintiffs' constitutional rights.

E.      That this Court adjudge, decree, and declare the rights and other legal relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

F.      That this Court retain jurisdiction over the matter for the purposes of enforcing this Court's order.

G.      That this Court declare Plaintiffs are a prevailing party and award Plaintiffs the reasonable costs and expenses of this action, including a reasonably attorney's fees in accordance with 42 U.S.C. §1988.

///

1   H.   That this Court grant such other and further relief as this Court deems
2   equitable and just under the circumstances.

3                                           Respectfully submitted,

4

5                                           NATIONAL CENTER FOR LAW &
6                                           POLICY

7   Dated:  April 22, 2020                  /s/ Dean R. Broyles, Esq.
8                                           Dean R. Broyles
9                                           Attorneys for Plaintiffs, **Cross Culture**
                                            **Christian Center and Pastor Jonathan**
10                                          **Duncan**

11

12                                          ADVOCATES FOR FAITH & FREEDOM
13

14  Dated:  April 22, 2020                  /s/ Robert H. Tyler, Esq.
15                                          Robert H. Tyler
16                                          Attorneys for Plaintiffs, **Cross Culture**
                                            **Christian Center and Pastor Jonathan**
17                                          **Duncan**

18

19

20

21

22

23

24

25

26

27

28

**VERIFIED COMPLAINT**

1
2
3
## **VERIFICATION**
4
5    I, Jonathan Duncan, have read the foregoing Verified Complaint and know its
6    contents.
7        1.    I am a party to this action.
8        2.    I have read the foregoing complaint and know of the contents thereof.
9
10       3.    The same is true of my own knowledge, except as those matters which
11   therein are stated on information as to information and belief.  As to those matters,
12   I believe them to be true.
13
14   I declare under penalty of perjury under the laws of the United States of America
15   that the foregoing is true and correct.
16
17       Executed on ___Apr. (22, 2020__, at ___Lodi___, California.
18
19                                              _____
                                                Jonathan Duncan
20
21
22
23
24
25
26
27
28

## **VERIFICATION**

I, Jonathan Duncan, Chief Executive Officer of Cross Culture Christian Center, declare as follows:

1.     Cross Culture Christian Center, a California Domestic Nonprofit Corporation, is a party to this action.  I am the Chief Executive Officer and am duly authorized to act on behalf of Cross Culture Christian Center.

2.     I have read the foregoing Verified Complaint and know of the contents thereof.

3.     The same is true of my own knowledge, except as those matters which therein are stated on information as to information and belief.  As to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _April 22, 2020_, at _Lodi_, California.

_____
Cross Culture Christian Center
By: Jonathan Duncan
Its: Chief Executive Officer